```
            UNITED STATES DISTRICT COURT
             DISTRICT OF NEW HAMPSHIRE
```

David Konze

    v.                                  Civil No. 18-cv-63-JL
                                         Opinion No. 2019 DNH 011

Town of Salem, et al.

**MEMORANDUM ORDER**

Summary judgment in this action, in which plaintiff David Konze alleges that members of the Salem Police Department violated his rights under the United States Constitution, turns on whether contents of his cell phone were searched pursuant to a valid warrant.  Konze was arrested by two of the defendants, Detectives Robert Farah and Joshua Dempsey, on May 9, 2015.  While being questioned at the Salem Police Department, he requested, but was not provided, an opportunity to test his blood glucose.  Detective Farah subsequently obtained a warrant to search Konze's phone and, after another officer created a forensic copy of the phone's contents, did so.  Konze brings claims under 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution by (1) using excessive force in his arrest, (2) failing to provide him with medical treatment after the arrest, (3) searching his phone

before a warrant issued, and (4) conducting a search broader than the circumstances justified.

This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). The defendants move for summary judgment on all claims. Because Konze concedes that defendants did not use excessive force and did not fail to provide him with medical treatment after his arrest, the defendants are entitled to summary judgment on those claims. And because Konze has not raised any dispute of material fact concerning the warrant-related claims, the court grants the defendants' motion for summary judgment on those claims as well.

I. **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if it could "sway the outcome under applicable law." Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the factual record] which it believes demonstrate the absence of a genuine issue of material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
"Once the moving party has properly supported [his] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [he] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [his] favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-35).

"[T]he non-moving party 'may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial.'" Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving" parties. Estrada, 594 F.3d at 62.

## II.  Background

On the night of May 9, 2015, Konze visited an acquaintance at a house on Haverill Road in Salem, New Hampshire. While he was there, an altercation broke out. According to its occupants, Konze had broken into the home the previous day and, that night, had sent the occupants a series of threatening text messages before arriving unexpectedly and entering the house.

3

One of the occupants called 911. Konze fled into woods near the house.

Detectives Farah and Dempsey, and a third not named in this action, responded to the call. Detective Farah arrived first and followed Konze into the woods. He ordered Konze to leave the woods and lay face down on the ground. Konze complied. All three officers took Konze into custody. According to Konze, the arrest lasted less than twelve seconds.

Based on the text messages that one of the house's occupants showed to Detective Farah, he sought and obtained a warrant to search Konze's phone -- specifically, his text messages, photographs, voicemail, email, GPS coordinates, and internet history. Another detective copied the phone's contents and reviewed that copy.

Konze was interviewed at the Salem Police Department. At one point during the interview, he informed the interviewing detective that he was diabetic and asked to test his blood sugar, though he did not indicate that he felt any ill effects. The detective agreed to ask the fire department to bring a glucometer for this purpose but instead concluded the interview. Konze was then transported to the Rockingham County House of Corrections, where he requested and was given crackers and milk. He sought no further treatment.

Konze was charged with burglary, assault with a deadly weapon, falsifying physical evidence, and criminal threatening. A second burglary charge was added in light of GPS information drawn from Konze's phone.[1] Ultimately, Konze pleaded guilty to simple assault and criminal threatening.

## III. Analysis

In this action, Konze brought two claims against the Town of Salem and three of its officers. By his first claim, brought under 42 U.S.C. § 1983, he alleged violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.[2] As his second claim, he sought declaratory judgment that the defendants' conduct violated those Amendments, as well as Konze's rights under New Hampshire's Constitution.[3] Konze has since clarified that he based these claims on: (1) Detective Farah's use of force in pointing his gun at Konze during the arrest; (2) Officer Dempsey's use of force in allegedly striking Konze from behind during the arrest; (3) the scope of the search warrant; (4) the scope and timing of the search of his phone; and (5) failure to provide medical

---

[1] See Objection (doc. no. 18) ¶ 8.

[2] Compl. (doc. no. 1) ¶ 25.

[3] Id. ¶ 26.

attention as requested during his interview at the police station.

**Undisputed claims.** In his objection to the defendants' summary judgment motion, Konze indicated that he "chooses not to contest Defendants' contention that the use of force by Detectives Farah and Dempsey was not excessive."[4] At oral argument, Konze conceded that no record evidence supported this claim. And, though he did not affirmatively withdraw it, Konze neither addresses nor raises any dispute of fact with respect to his claim that he was not afforded medical attention. Defendants are, therefore, entitled to summary judgment on both claims.

**Timing of search warrant.** Konze argues, in essence, that Detective Farah searched his phone before obtaining a warrant to do so.[5] The warrant to search his phone issued at 8:50am EDT on May 13, 2015.[6] There is no dispute that Detective Farah searched a copy of the phone's contents. Any factual dispute that may exist concerns what time that copy was made.

Konze's position that the phone's contents were copied before the warrant issued initially appears to have support in

---

[4] Objection (doc. no. 18) ¶ 9.

[5] Objection (doc. no. 18) ¶ 12; id. at 3-4.

[6] Farah Aff't Ex. C (doc. no. 17-5).

6

the record.  Detective Ryan Sambataro's report suggests that the copy was made at 10:13am UTC which, in May 2015, equated to 6:13am EDT -- two and a half hours before the warrant issued. Sambataro used Cellebrite forensic data extraction software to extract the contents of Konze's cell phone, which he then burned onto physical media and provided to Detective Farah.[7]  In his report, he recorded that the extraction began at 10:13:16 UTC and finished at 10:14:27 UTC.[8]  The extraction report itself lists the extraction start and end times as 10:13:16 AM and 10:14:27 AM, respectively, though does not indicate whether those times are local -- that is, EDT -- or UTC.[9]  It does, however, list the "Time zone settings (UTC)" as "Original UTC value."[10]  Konze argues that this time zone setting indicates that the data could have been extracted at 10:13am UTC.

The weight of record evidence, however, supports the opposite conclusion -- that the copy was made after the warrant issued.  In his sworn affidavit submitted in support of the summary judgment motion, Detective Sambataro explained that the use of "UTC" in his report was an error and that he made the

---

[7] Obj. Ex. C (doc. no. 18).

[8] Id.

[9] Obj. Ex. B (doc. no. 18).

[10] Id.

7

copy at 10:13 AM local time, after Detective Farah provided him with the executed warrant.[11]  Detective Farah contemporaneously reported that Detective Sambataro "ripped a copy of all data and files" from Konze's phone "[a]t approximately 1013 hours."[12]  In his deposition, Detective Farah confirmed that the copy was made at 10:13 AM local time, after he provided both the phone and the executed warrant to Detective Sambataro.[13]  Detective Sambataro's report indicates that he worked from 8:00am to 4:00pm on May 13, 2015, suggesting he did not copy the phone's contents around 6:00am.  And Konze himself filed a "Memorandum for Clarification," explaining that he learned from a "Cellebrite Junior Technical Support Engineer" that, despite references to UTC in the extraction report, the listed extraction date and time referred to local time.[14]

Thus, while there initially appeared to be a dispute of material fact concerning precisely when Detective Sambataro extracted data from Konze's phone, the sworn affidavits and testimony, as well as Konze's own research, indicate that the extraction occurred at 10:13 AM EDT, after the warrant issued at

---

[11] Sambataro Aff't (doc. no. 19-1) ¶¶ 5, 8.

[12] Obj. Ex. D (doc. no. 18).

[13] Surreply Ex. C (doc. no. 20-3) at 20-21.

[14] Mem. for Clarification (doc. no. 23).

8

8:50 AM EDT.  Accordingly, the defendants are entitled to summary judgment on Konze's claim that the phone was searched before the warrant issued.

**Scope of search warrant.**  Konze summarily "asserts that the scope of the search" of his cell phone "was also overly broad, given the circumstances,"[15] in violation of the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "To satisfy [the probable-cause] standard, a search-warrant application must reveal probable cause to believe two things:  one, that a crime has occurred . . . and two, that specified evidence of the crime will be at the search location . . . ."  United States v. Rivera, 825 F.3d 59, 63 (1st Cir. 2016).  Konze appears to challenge this latter "nexus element" with respect to certain of his phone's contents.

Detective Farah sought and obtained a warrant to search "[a]ll forms of messages" on Konze's phone, "to include, but not limited to" text, MMS, email, voicemail, and Apple Messages, as well as to search call logs, photographs, videos, GPS

---

[15] Surreply (doc. no. 20) at 1.

coordinates, and internet history.[16]  In support of the warrant application, Detective Farah submitted an affidavit explaining that one occupant of the house at 24 Haverhill Road showed him harassing and threatening text messages that Konze had sent before his arrival.[17]  In questioning Detective Farah, Konze acknowledged that these events gave Detective Farah probable cause to search his texts, call logs, and iMessages.[18]  But he questioned whether probable cause existed for searching the photographs, videos, GPS, internet history, and email on his phone.[19]  Specifically, he challenges whether the defendants had probable cause to believe that evidence connected to those threats and his intentions in visiting the house that evening would be found among his photographs, videos, GPS, internet history, and email.

"[P]robable cause does not demand certainty, or proof beyond a reasonable doubt, or even proof by a preponderance of

---

[16] Farah Aff't Ex. C (doc. no. 17-5).

[17] Farah Aff't Ex. B (doc. no. 17-4) ¶¶ 6-7, 11.  Konze does not dispute that Detective Farah was told that Konze sent a series of threatening text messages to one of the house's occupants that evening.  Nor does he dispute that the house's occupant showed text messages to Detective Farah on the night of the arrest.  Mot. for Summary Judgment (doc. no. 17) ¶ 5; Obj. (doc. no. 18) ¶ 5.

[18] Surreply Ex. C (doc. no. 20-3) at 14-15.

[19] Id.

the evidence—it demands only 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" Rivera, 825 F.3d at 63 (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)).  Courts consider the totality of the circumstances in determining whether probable cause existed to search a particular location.  Id.  "[A] connection with the search site can be deduced from the type of crime, the nature of the items sought, plus normal inferences as to where a criminal would hide evidence of his crime."  Id. (internal citations and quotations omitted).

Here, Konze concedes that probable cause existed to search the messaging applications on his phone.  Under the circumstances present in this case, if his messaging applications contained evidence concerning his threats to the house's occupant and his intentions on arriving at the house on the evening of May 9, other written-communication media on his phone, such as his email, may have included related evidence.  And, given that the altercation arose after he arrived at the house immediately after purportedly making threatening statements to the occupants, his GPS data may also reasonably contain evidence connected with the crime.  Cf. United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015) (rejecting particularity challenge to warrant authorizing search of cell phone where affidavit set forth "a substantial basis to believe"

that evidence of the crime existed on the defendant's "cell phone, but it was unclear as to the particular format in which the evidence existed.").

The evidence less clearly supports probable cause to search other media on Konze's phone, such as his videos and internet history. Even if the warrant was overbroad with respect to those categories of information, however, there is no evidence that Konze's videos or internet history were searched.[20] The only evidence concerning the scope of the actual search indicates that Detective Farah reviewed "the texts, call history, GPS information and some photos" from Konze's phone.[21] Nor does the plaintiff identify any damages arising from this limited search. Defendants are, accordingly, entitled to summary judgment on this claim as well.

## IV. Conclusion

Konze concedes that the defendants are entitled to summary judgment on his claims that the defendants used excessive force

---

[20] Because Konze further clarified his challenge to the scope of the warrant at oral argument, the court permitted the defendants to submit a supplemental memorandum addressing that argument. In that memorandum, the defendants provided general authority for broad, exhaustive phone search warrants. See Supp. Mem. (doc. no. 24) at 4-6. The court takes note of that authority but, as discussed here, it need not rely on that authority given the limited scope of the conducted search.

[21] Supp. Farah Aff't (doc. no. 24-1) ¶ 4.

and failed to provide him with medical attention.  He further concedes that Detective Sambataro copied, and Detective Farah thus searched, the contents of his phone after a warrant issued.  Finally, Konze has not raised a question of material fact concerning whether probable cause supported the scope of the warrant.

The defendants' motion for summary judgment[22] is, therefore, GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  January 15, 2019

cc:  David Konze, pro se
     Brian J.S. Cullen, Esq.

---

[22] Document no. 17.